UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARCIA T. WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:16-CV-852-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Marcia West ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find an error in the ALJ's analysis of Plaintiff's past relevant work, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. FACTUAL BACKGROUND[2]

### A. Plaintiff's Testimony and Medical Opinion Evidence

Plaintiff was fifty-nine years old on the date of the hearing before the ALJ. (Tr. 68). Plaintiff testified that she has chronic pain in her lower back and left leg; daily numbness and tingling; and depression (Tr. 76, 79-81, 83, 85). She cannot sit, stand, or walk for more than ten or fifteen minutes before needing to move or take a break. (Tr. 80-81). Plaintiff does not do chores around the house or grocery shopping because she cannot stand or walk for that long. (Tr. 82). She requires the use of a walker and assistance to shower. (Tr. 76, 82). She estimates that she falls at least once a week. (Tr. 81). Plaintiff testified that she does not drive and only leaves home for doctor appointments. (Tr. 79, 82). She reported that her memory is "very bad," requiring her to write everything down. (Tr. 80, 83).

The record contains opinion evidence from several sources regarding Plaintiff's physical and mental abilities. (Tr. 137-38, 345-48, 354-57, 497-505, 755-59). This evidence includes an opinion from a consultative examiner, Dennis A. Velez, M.D. (Tr. 497-505). On May 21, 2013, Dr. Velez conducted a physical examination of Plaintiff. (Tr. 497-98, 502). He identified Plaintiff's complaints, including back pain, pain in left leg, and difficulty going up and down stairs, bending, or squatting. (Tr. 499). Dr. Velez noted that Plaintiff demonstrated tenderness to palpation in the lumbosacral spine and residual sensory disturbance, but exhibited normal motor strength and range of motion. (Tr. 503). Dr. Velez diagnosed Plaintiff with possible lumbar spondylosis with residual left lower extremity numbness. (Tr. 503). Dr. Velez concluded Plaintiff would not have any limitations in sitting, standing or walking, except for walking at a normal

---

[2] This is not intended to be a comprehensive summary of the facts in the administrative record. The Court focuses primarily on the facts most relevant to the issues raised by the parties.

pace; Plaintiff would not have any manipulative, verbal, or written communication problems; and Plaintiff would be able to lift and carry at the waist level. (Tr. 503).

### B. Vocational Evidence

At the hearing before the ALJ, Plaintiff reported that she had worked in the past for about three years as a "receptionist and assistant administrator" at Humanitri. (Tr. 70). She described her duties as answering the phone and filing. (Tr. 71). She testified that she was not seated the majority of the day, but was up and down during the day, doing filing and whatever her boss needed her to do. (Tr. 71). In her Work History Report, Plaintiff reported that in her job at Humanitri from 2009 to 2011, she answered phones, did light typing, coordinated supervised prison transportation, and did monthly reports. (Tr. 268-69). She reported that she stood for four hours a day, sat for four hours a day, walked, and lifted less than 10 pounds. (Tr. 269).

Plaintiff also testified at the hearing that she had previously worked at Queen of Peace as a residential aide/case manager who monitored recovering addicts, a job in which she was on her feet the majority of the day. (Tr. 72-73).

At the hearing, the vocational expert stated that Plaintiff had worked in the past as a social service aide (Dictionary of Occupational Titles ("DOT") No. 195.367-034, skilled, light exertional level); an administrative clerk (DOT No. 219.362-010, skilled, light exertional level); and a receptionist (DOT number 237.367-038, a semi-skilled, sedentary exertional level). (Tr. 88). When the ALJ described a hypothetical individual with all of Plaintiff's limitations to the vocational expert, the vocational expert testified that such a person could perform Plaintiff's past work as a receptionist, as generally performed. (Tr. 88-89).[3] The vocational expert also stated

---

[3] The vocational expert initially testified that such an individual could perform the job as it was actually performed by Plaintiff and as it is generally performed, but then appeared to correct himself, stating, "Actually, I would say as generally performed." (Tr. 88-89).

3

that he was "not sure she was complete when she described what she did as a receptionist." (Tr. 89).

## II. PROCEDURAL BACKGROUND

On February 26, 2013, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since November 10, 2007. (Tr. 191-196). Her application was initially denied. (Tr. 141-45). On June 26, 2013, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 148-49). On January 15, 2015, Plaintiff amended her alleged onset date to November 3, 2010. (Tr. 224). After a hearing, the ALJ issued an unfavorable decision on February 9, 2015. (Tr. 8-21). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on March 13, 2015, but the Appeals Council declined to review the case on May 7, 2016. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the

claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since November 10, 2007, the initial alleged onset date; that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ made the following RFC finding:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can only occasionally climb a ramp or stairs and can only occasionally stoop and crouch. She should never be required to climb a ladder, rope or scaffold, nor should she be required to kneel or crawl. In addition, she should avoid all exposure to hazards, such as unprotected heights and dangerous machinery.

6

(Tr. 14). The ALJ concluded Plaintiff was capable of performing her past relevant work as a receptionist, DOT #237.367-038, a semi-skilled position at the sedentary exertional level, as it is generally performed. (Tr. 20). Therefore, the ALJ found Plaintiff was not disabled. (Tr. 20).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff argues that the ALJ erred by affording significant weight to Dr. Velez's opinion without discussing the fact that Dr. Velez is on professional and criminal probation. Second, Plaintiff argues that the ALJ erred by finding that Plaintiff could return to past relevant work as a receptionist, as that job is generally performed, because the ALJ failed to recognize that Plaintiff's past relevant work was actually a composite job involving both receptionist duties and administrative clerk duties.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.

2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Did Not Err in Her Evaluation of Dr. Velez's Opinion

Plaintiff argues that the ALJ improperly accorded significant weight to Dr. Velez's opinion without discussing Dr. Velez's criminal conviction and the professional discipline against him. Plaintiff points out that the year after Dr. Velez evaluated Plaintiff, Dr. Velez pleaded guilty to third degree domestic assault and was placed on medical probationary status from neurosurgery. (Tr. 309-22). Plaintiff argues that this undermines Dr. Velez's credibility.

The Court finds no reversible error with respect to the ALJ's evaluation of Dr. Velez's medical opinion. There are several factors the ALJ must take into consideration when determining how much weight to accord a physician's opinion, including the nature of the treatment or examining relationship, whether the opinion is supported with evidence; whether the opinion is consistent with the record as a whole; whether the physician is a specialist; and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ adequately considered these factors. The ALJ reasonably found that Dr. Velez's opinions were entitled to significant weight because they were supported by his comprehensive physical examination of Plaintiff, including range of motion and muscle strength testing. (Tr. 20). The ALJ also extensively reviewed the other medical opinion evidence, medical records, and hearing testimony, and reasonably found that Dr. Velez's medical opinion was consistent with the record as a whole. (Tr. 20, 137-38, 345-48, 354-57, 497-505).

Although the ALJ did not discuss Dr. Velez's domestic assault conviction or his having been placed on medical probation and restricted from performing neurosurgery (both of which occurred *after* his 2013 evaluation of Plaintiff), Plaintiff offers no reason for a finding that those facts undermined the validity of Dr. Velez's 2013 evaluation of Plaintiff's functional abilities. The Court thus finds no error in the ALJ's evaluation of this opinion. *See Ford v. Colvin*, No. 14-00830-MDH, 2015 WL 5619303, at *3 (W.D. Mo. Sept. 24, 2015) ("While the Court acknowledges that Dr. Velez has subsequently been placed on probation from the practice of neurosurgery, there is nothing in the record that constitutes a reversible error with regard to the ALJ's evaluation of the record as a whole. Other than Plaintiff's argument that Dr. Velez has now been disciplined, Plaintiff offers nothing to show how that affected his evaluation of Plaintiff.").

For the above reasons, the Court finds that the ALJ did not commit reversible error by failing to discuss Dr. Velez's professional discipline or criminal conviction in evaluating his opinion.

### C. Remand is Required for the ALJ to Evaluate Plaintiff's Past Relevant Work as a Composite Job at Step Four

Plaintiff's second argument is that the ALJ erred at Step Four by finding that Plaintiff could perform her past work as a receptionist, as such work is generally performed. Specifically, Plaintiff argues that she did not actually have past relevant work as a receptionist, but instead had past relevant work in a "composite job" that encompassed both the duties of a receptionist (a sedentary exertional level occupation) and the duties of an administrative clerk (a light exertional level occupation). Plaintiff argues that the ALJ erred by finding that because she could perform the duties of *one* of those occupations making up that composite job, she could return to her past

relevant work as it is generally performed. Plaintiff argues that the ALJ was instead required to analyze her past relevant work under the rules that apply to composite jobs.

Generally, a claimant will be found not disabled at Step Four of the five-step disability determination if she maintains the RFC to perform her past relevant work, either as she actually performed it or as it is generally performed in the national economy. Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *2. *See also* 20 C.F.R. §§ 404.1560(b), 416.960(b); *Blackwell v. Colvin*, No. 4:14-CV-252-JMB, 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015) (citing *Arriaga v. Astrue*, No. 8:11-CV-261, 2012 WL 4105091, at *17 (D. Neb. Sept. 18, 2012)). In *Arriaga*, the district court explained that where a plaintiff's past relevant work involves a composite job, the ALJ must evaluate the plaintiff's ability to perform the past relevant work by analyzing the specific facts of the case, rather than by relying on general job descriptions:

> To determine how a job is usually performed in the national economy, the Commissioner may rely on job descriptions appearing in the Dictionary of Occupational Titles. [SSR 82-61, 1982 13187, at *1-*2 (1982)]. However, composite jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." *Id.* Therefore, when a claimant's past relevant work is considered to be a composite job, the claimant's ability to perform his past job must be "evaluated according to the particular facts of each individual case." *Id.*

2012 WL 4105091, at *17. *See also Blackwell*, 2015 WL 4132000, at *17 (same; quoting Arriaga, 2012 WL 4105091, at *17); *McAbee v. Colvin*, No. 15-5097, 2016 WL 3983734, at *2 (same).

Applying the above standard, district courts within the Eighth Circuit and elsewhere have held that where a plaintiff's past relevant work is a composite job involving a blend of duties from two DOT job descriptions, it is reversible error for the ALJ to make a Step Four finding that a claimant is not disabled merely because he or she can perform the tasks required for one of the two DOT job descriptions. *See McAbee*, 2016 WL 3983734, at *3 (remanding where the ALJ

found at Step Four that the plaintiff could perform his past relevant work as a "manifest clerk" (a sedentary exertional level job in the DOT), where the record showed that the plaintiff's past job actually involved both the tasks of a manifest clerk and the tasks of a "stacker" (a heavy exertional job); noting that "[t]he ALJ was required, as a matter of law, to address [the] [p]laintiff's past relevant work under the composite job rubric"); *Lyda v. Colvin*, 221 F. Supp. 3d 1254, 1259 (D. Colo. 2016) (remanding where the ALJ found at Step Four that the plaintiff was capable of performing his past job as a product broker, where the plaintiff's past relevant work "did not consist solely of the responsibilities associated with the job of product broker" (a light exertional level job) but also involved doing the tasks of "owner/manager nut processing" (a medium exertional job); noting that "a step four determination will be supported only if substantial evidence shows the plaintiff can perform the requirements of all the component jobs"); *Blackwell*, 2015 WL 4132000, at *17 (remanding where the ALJ found at Step Four that the plaintiff could return to the position of home healthcare manager as generally performed (a light exertional level job), where the record established that the plaintiff's past job actually involved both the tasks of a home healthcare manager and the tasks of a "home health aide" (a medium exertional level job)); *Garcia v. Colvin*, No. 12 C 4191, 2013 WL 3321509, at *11 (N.D. Ill. June 28, 2013) (remanding where the ALJ found at Step Four that the plaintiff could return to his past relevant work as an "inspector II" as generally performed, where the vocational expert testified that the plaintiff's past relevant work was a combination of the inspector II position (light, semi-skilled) and a machine packager position (medium, unskilled); noting that "[a]n ALJ 'may not deem a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding her capable of performing the less demanding of the two jobs.'") (quoting *Peterson v. Astrue,* No. 09-209, 2010 WL 3219293, at *5

11

(N.D. Ind. Aug. 12, 2010)); *Arriaga*, 2012 WL 4105091, at *17-*18 (remanding where the ALJ found at Step Four that the plaintiff was capable of performing his past relevant work as an "administrative officer" where the record showed that his past relevant work also included the duties of a "computer repairer" job and the ALJ "simply disregarded the component of [the plaintiff's] past work that matched the job description of a computer repairer").

The Court agrees with Plaintiff that the record shows that her past relevant work as a receptionist and assistant administrator at Humanitri was a composite job. A composite job is "work that has a blend of tasks from several different occupations." *Blackwell*, 2015 WL 4132000, at *17 (quoting Program Operations Manual System ("POMS") DI 25001.001(11)). *See also McAbee*, 2016 WL 3983734, at *2. "The main duties of a composite job will 'only be adequately described by multiple DOT occupations.'" *Blackwell*, 2015 WL 4132000, at *17 (quoting POMS DI 25001.001(11)). When asked to characterize Plaintiff's past relevant work, the vocational expert testified, in relevant part, that Plaintiff had worked in the past as an administrative clerk (DOT No. 219.362-010, skilled, SVP 6, light exertional level) and as a receptionist (DOT number 237.367-038, a semi-skilled, SVP 4, sedentary position). (Tr. 88). It appears that the job the vocational expert was describing when he cited those two DOT occupations was a single job Plaintiff had done in the past: the "receptionist and assistant administrator" job she performed at Humanitri from 2009 through 2011.[4] Because the vocational expert needed to point to multiple DOT occupations to describe the Humanitri job, it was a composite job. Moreover, an examination of the relevant DOT descriptions and Plaintiff's description of her own duties shows that Plaintiff's job included duties from both DOT

---

[4] Defendant does not appear to dispute this. Although Plaintiff's Work History Report describes other jobs Plaintiff held, none of those appear to correspond to these two DOT occupations identified by the vocational expert. In her brief, Defendant does not identify any other past jobs to which the vocational expert might have been referring when he cited these two jobs.

occupations. Some of the duties Plaintiff described (such as answering phones and light typing) are described in the DOT's description of a receptionist. *See* DOT No. 237.367-038. However, other duties Plaintiff described (such as coordinating and supervising prison transportation and doing monthly reports) are not described in the DOT's description of a receptionist job, but are consistent with the DOT's definition of the administrative clerk job. *See* DOT No. 239.362-010. Moreover, Plaintiff's description of the physical demands of her job (standing four hours a day, not being seated most of the day, and being up and down during the day) is also consistent with the DOT's description of the administrative clerk job (light work requiring "walking or standing to a significant degree"), but not with the DOT's description of the receptionist job (sedentary work that "involves sitting most of the time, but may involve walking or standing for brief periods of time"). In sum, the vocational expert's testimony, the plaintiff's description of her past job, and the DOT all support the conclusion that Plaintiff's past work involved a blend of occupations described by multiple DOT occupations and thus was a composite job.

Defendant argues that Plaintiff's job was not a composite job because although her job included both administrative clerk and receptionist duties, she "performed all the tasks of a receptionist job." (Def.'s Br., at p. 5). That argument is without merit for several reasons. First, Defendant provides no authority to support the position that a job composed of duties from two DOT occupations is not a composite job merely because it encompasses all of the duties of one of those occupations, nor has the Court identified any such authority. The Court's review of the case law indicates that to determine whether a job is a composite job, courts simply analyze whether the job involved a blend of duties from two or more different occupations described in the DOT. *See, e.g.*, *McAbee*, 2016 WL 3983734, at *3; *Lyda*, 221 F. Supp. 3d at 1258; *Blackwell*, 2015 WL 4132000, at *17; *Garcia*, 2013 WL 3321509, at *11; *Arriaga*, 2012 WL 4105091, at

13

*17. They do not rest their decisions on a determination of whether the job requires all or only a subset of the duties of a given occupation described in the DOT. Second, as Plaintiff points out, acceptance of Defendant's position could lead to a result contrary to Step Four's requirement that to qualify as past relevant work, a claimant's past work must be performed at the substantial gainful activity level. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) ("Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."). Even if Plaintiff spent some portion of her time in her past job performing all of the duties of a receptionist, there is no evidence in the record that she performed the duties of a receptionist at the level of substantial gainful activity. In the absence of such evidence, a finding that Plaintiff has past relevant work as a receptionist is not supportable. Third, even assuming, *arguendo*, that Defendant were correct that a job that involves all of the duties of a receptionist cannot be a composite job, the record does not support a finding that Plaintiff performed all of the duties of a receptionist. The DOT's description of a receptionist includes many duties that Plaintiff did not report performing, including determining the nature of callers' business, directing callers to destinations, arranging for appointments, operating a PBX telephone console, making future appointments and answering inquiries, and distributing mail and messages.

Although the evidence shows that Plaintiff's past relevant work was a composite job involving both receptionist tasks and administrative clerk tasks, the ALJ did not analyze both components of Plaintiff's past relevant work in her Step Four analysis, nor did she engage in a fact-specific evaluation of Plaintiff's ability to perform her past relevant work. Instead, the ALJ found that Plaintiff "has past relevant work as a receptionist, DOT # 237.367-038, a semi-skilled position at the sedentary exertional level," and thus found that, consistent with the RFC

determination, Plaintiff was capable of performing that work as it is generally performed. The ALJ's failure to address the administrative clerk aspects of plaintiff's past work is significant here particularly because the Vocational Expert's testimony suggests that plaintiff's administrative clerk duties may have required functional ability beyond the RFC. As discussed in the cases cited above, it was reversible error for the ALJ to find Plaintiff not disabled at Step Four because she could perform the tasks required of one of the two jobs making up her composite job. *See, e.g.*, *Blackwell*, 2015 WL 4132000, at *17 (citing *Arriaga*, 2012 WL 4105091, at *17). Thus, the Court will remand this case for the ALJ to assess Plaintiff's past relevant work under the rules applicable to composite jobs.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that there is a legal error in the Commissioner's Step Four finding and that this case must be remanded. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

/s/ Shirley Padmore Mensah<br>
SHIRLEY PADMORE MENSAH<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2017.